Philip D. Stern, Esq.
Andrew T. Thomasson, Esq.
**STERN•THOMASSON LLP**
2816 Morris Avenue, Suite 30
Union, NJ 07083-4870
Telephone: (973) 379-7500
*On behalf of All Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER E. PORTER, DAN MENTE, and SCHUBERT E. JACQUES, Both individually and on behalf of the Classes they seek to represent, <br><br> Plaintiffs, <br><br> vs. <br><br> SQUARETWO FINANCIAL CORPORATION; CACH, LLC; CACH OF NJ, LLC; LAW FIRM OF ALLAN C. SMITH, P.C.; THE LAW FIRM OF RYAN E. CALEF AND ASSOCIATES, LLC; DBG COLLECTION, INC.; and JOHN AND JANE DOES 1 THROUGH 50, <br><br> Defendants. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs, Jennifer E. Porter ("PORTER"), Dan Mente ("MENTE"), and Schubert E. Jacques ("JACQUES") (collectively "Plaintiffs"), both individually and on behalf of the Class they seek to represent, by way of Complaint against Defendants, SQUARETWO FINANCIAL CORPORATION ("SQUARE2"), CACH, LLC ("CACH"), CACH OF NJ, LLC ("CACH-NJ"), LAW FIRM OF ALLAN C. SMITH, P.C. ("SMITH"), THE LAW FIRM OF RYAN E. CALEF AND ASSOCIATES, LLC ("CALEF"), and DBG COLLECTION, INC. ("DBG") (collectively referred to "Defendants") says:

## I.      NATURE OF THE ACTION

**1.**      This action stems from the Defendants' collaborative activities in pursuit of the common purpose of to collect consumer debts which resulted in violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## II.      PARTIES

*(A)      Plaintiffs.*

**2.**      PORTER is a natural person.

**3.**      At all times relevant to the factual allegations of this Complaint, PORTER was a citizen of the State of New Jersey, residing in Bergen County, New Jersey.

**4.**      MENTE is a natural person.

**5.**      At all times relevant to the factual allegations of this Complaint, MENTE was a citizen of the State of New Jersey, residing in Union County, New Jersey.

**6.**      JACQUES is a natural person.

**7.**      At all times relevant to the factual allegations of this Complaint, JACQUES was a citizen of the State of New Jersey, residing in Union County, New Jersey.

*(B)      Defendants.*

**8.**      At all times relevant to the factual allegations of this Complaint, SQUARE2 was a for-profit Delaware corporation.

**9.**      On information and belief, SQUARE2's principal office is located at 4340 South Monaco Street, Second Floor, Denver, Colorado.

**10.**      On information and belief, SQUARE2 is registered to transact business in the State of New Jersey.

**11.**      At all times relevant to the factual allegations of this Complaint, CACH was a for-profit Colorado limited liability company.

**12.**      On information and belief, CACH's principal office is located at 4340 South Monaco Street, Second Floor, Denver, Colorado—the same as SQUARE2's principal office.

**13.**      On information and belief, CACH is registered to transact business in the State of New Jersey.

**14.** At all times relevant to the factual allegations of this Complaint, CACH-NJ was a for-profit Colorado limited liability company.

**15.** On information and belief, CACH-NJ's principal office is located at 4340 South Monaco Street, Second Floor, Denver, Colorado—the same as SQUARE2's principal office.

**16.** On information and belief, CACH-NJ is registered to transact business in the State of New Jersey.

**17.** At all times relevant to factual allegations of this Complaint, SMITH is a for-profit Pennsylvania professional corporation.

**18.** On information and belief, SMITH is registered to transact business in the State of New Jersey.

**19.** On information and belief, SMITH's registered office and principal office is located at 1276 Veterans Highway, Suite E-1, Bristol, Pennsylvania.

**20.** At all times relevant to factual allegations of this Complaint, CALEF is a for-profit Pennsylvania limited liability company.

**21.** On information and belief, CALEF is the successor in interest to SMITH.

**22.** On information and belief, CALEF is ***not*** registered to transact business in the State of New Jersey.

**23.** On information and belief, CALEF's registered office and principal office is located at 1276 Veterans Highway, Suite E-1, Bristol, Pennsylvania.

**24.** At all times relevant to the factual allegation of this Complaint, DBG was a for-profit Pennsylvania corporation.

**25.** On information and belief, DBG's activities as alleged in this Complaint constitute sufficient minimum contacts with the State of New Jersey for purposes of exercising personal jurisdiction over it.

**26.** On information and belief, DBG's registered office and principal office are located at 1276 Veterans Highway, Suite E-1, Bristol, Pennsylvania—the same as SMITH and CALEF's registered and principal office.

**27.** JOHN AND JANE DOES NUMBERS 1 THROUGH 50, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

**28.**   The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 50, are natural persons and/or business entities all of whom reside or are located within the United States and all of whom personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of SQUARE2, CACH, CACH-NJ, SMITH, CALEF, and DBG that are the subject of this Complaint.  Those Defendants personally control the illegal acts, policies, and practices utilized by SQUARE2, CACH, CACH-NJ, SMITH, CALEF, and DBG and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

### III.   JURISDICTION AND VENUE

**29.**   Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

**30.**   Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims occurred within this federal judicial district, and because Defendants, individually or through the actions of persons authorized to act on their behalf, regularly transact business within this federal judicial district and, therefore, reside in the State of New Jersey within the meaning of 28 U.S.C. § 1391(b) and (c).

### IV.   CONTENTIONS REGARDING CLAIMS ARISING UNDER THE FAIR DEBT COLLECTION PRACTICES ACT

#

**31.**   Plaintiffs' legal contentions with regard to the claims arising under the FDCPA are set forth in the attached **Schedule A.**

### V.   FACTUAL ALLEGATIONS

Plaintiffs make the following factual allegations in support of this Complaint:

*(A)*   *Defendants' Roles in the "Closed Loop Network"—a System Designed for Centralized Management of Debt Collection.*

**32.**   SQUARE2 shares are publicly-traded and, therefore, it is subject to regulation by the United States Security and Exchange Commission ("SEC").

**33.**   In compliance with SEC regulations, SQUARE2 must annually file Form 10-K.

**34.**   SQUARE2's most recently filed Form 10-K[1] (referred to here as simply "10-

###############################################

#

[1] SQUARE2's Form 10-K for the fiscal year ending on December 31, 2014 was accessed on April 20, 2015.

K") was for the fiscal year ending on December 31, 2014.

35.     The 10-K was, on April 20, 2015, available on SQUARE2's website at URL: http://www.SQUARE2twofinancial.com/wp-content/uploads/2015/03/SQUARE2Two-2014.12.31-10K-03.04-1.49pm-FINAL.pdf. The 10-K is also available on SEC's website, www.sec.gov, through its EDGAR system specifically at the following URL: https://www.sec.gov/Archives/edgar/data/1505966/000150596615000006/squaretwo-2014123110k.htm.

36.     The 10-K is incorporated by reference and, without limiting the content of the 10-K, it states the following facts:

36.01.   SQUARE2's "primary business is the acquisition, management and collection of charged-off consumer and commercial accounts receivable that we purchase from financial institutions, finance and leasing companies, and other issuers in the United States (U.S.) and Canada." 10-K at 2.

36.02.   SQUARE2 "operates [its] domestic charged-off receivables management business through a series of subsidiary entities, including CACH, LLC, CACV of Colorado, LLC, CACH of NJ, LLC, CACV of New Jersey, LLC, SquareTwo Financial Services Corporation (d/b/a Fresh View Solutions), Orsa, LLC, Candeo, LLC and Autus, LLC." 10-K at 3.

36.03.   SQUARE2 collects debt through those subsidiaries, which include call centers, and "a network of regional law offices, also referred to as 'branch offices,' exclusively dedicated to SquareTwo." 10-K at 2, 37 and 74.

36.04.   Each regional law office "performs recovery work exclusively on our [i.e., SQUARE2's] behalf and utilizes our account management system in accordance with specified contractual arrangements." 10-K at 3 and 38.

36.05.   SQUARE2 calls its "U.S. operating business model"—which encompasses its call centers and "network of regional law offices"— as the "Closed Loop Network." 10-K at 2, 3.

36.06.   SQUARE2's command and control of the various subsidiaries and branches within the Closed Loop Network is through SQUARE2's proprietary technology platform called "eAGLE." 10-K at 11.

**36.07.** Each regional law firm agrees to pay SQUARE2 a royalty for the use of eAGLE "for each dollar collected." 10-K at 3 and 38.

**37.** On information and belief, one of the financial institutions from which members of the Closed Loop Network purchased charged-off consumer account receivables was Bank of America, N.A.

**38.** On information and belief, MBNA America Bank, N.A. was acquired by or merged into Bank of America, N.A. in or about 2006 and its name was changed to FIA Card Services, N.A. Consequently, MBNA America Bank, N.A, FIA Card Services, N.A. and Bank of America, N.A. are, at least for matters material to this Complaint, a single entity ("Bank of America, N.A.").

**39.** As stated in the 10-K, CACH is a subsidiary entity of SQUARE2 through which SQUARE2 manages its collection of charged-off consumer debts and, consequently, is a component member of the Closed Loop Network.

**40.** As stated in the 10-K, CACH-NJ is a subsidiary entity of SQUARE2 through which SQUARE2 manages its collection of charged-off consumer debts and, consequently, is a component member of the Closed Loop Network.

**41.** SMITH is one of SQUARE2's regional law firms or "branch offices" and, as such, is a component member in the Closed Loop Network.

**42.** On information and belief, SMITH and CALEF are managed and controlled by DBG—in particular, by one of DBG's owners, Brian Tonner. Such information includes:

**42.01.** SMITH and CALEF employees are assigned an email address use a domain name of "@dbgnlaw.com."

**42.02.** In an online advertisement of an opening for an "Associate Attorney" position at SMITH, the link to "Law Firm of Allan C. Smith, P.C." for information about SMITH, leads to a page titled "DBG Collection Inc" and states that DBG "maintains the management aspect for" SMITH and "assists and supervises the collection of charge-off debt received from Square Two Financial, other Clients, and debt purchased by the Firm." The "About" page for DBG continues:

Why a Law Firm? The professionalism of a law firm, as opposed to a collection agency, is much more appealing for banks and financial institutions, in addition to ***creating a sense of urgency for the consumer.***" [Emphasis added.]

**42.03.** In an online advertisement of an opening for a "Paralegal (New Jersey Experienced)" position at CALEF the link states "About this company Law Firm of Ryan E. Calef and Associates, LLC DBG Collection Inc is an advisory group established in 2001, which partners with SquareTwo Financial..." and its link leads to a page titled "DBG Collection Inc" with the job postings.

**(B)**     ***The Close Loop Network's Attempt to Collect from PORTER.***

**43.**     On October 17, 2014, SMITH commenced a civil action ("Porter Collection Case") in the Superior Court of New Jersey by filing a complaint in a case entitled *CACH OF NEW, LLC As Assignee of Bank of America, N.A. v. Jennifer Porter* which was designated in that court by Docket No. BER-DC-017527-14.

**44.**     A true copy of that complaint is attached as **Exhibit A.**

**45.**     In accordance with rules governing that court, Defendants provided the court with PORTER's address and the clerk of that court arranged for service of process through the mail.

**46.**     Sometime after October 17, 2014, PORTER was served with process in the Porter Collection Case

**47.**     Among other things, the complaint filed in the Porter Collection Case alleged:

**47.01.** Bank of America, N.A., as the "Issuer," issued a credit card under PORTER's name and assigned a specific account number;

**47.02.** PORTER's last payment on that account was made on or about April 25, 2011 but that there still remained a past due balance ("Porter Debt") on the account in the amount of $4,311.46.

**48.**     The complaint also alleged that PORTER agreed to the terms and conditions set forth in a card holder agreement.

**49.**     Pursuant to the card holder agreement, Delaware law governed the parties' rights with respect to the Porter Debt.

**50.**     Pursuant to the card holder agreement PORTER would have been in default when a minimum payment became past due and, so long as there was a balance on the account, a minimum payment was due no less frequently than monthly.

**51.**     Based on the alleged date of last payment and the requirement for monthly minimum payments, the debt alleged to be due from PORTER was in default prior to

October 17, 2011 which was more than three years prior to the commencement of the Porter Collection Case.

52. Based on the allegations in the complaint filed in the Porter Collection Case, the Porter Debt was in default at the time it was placed with, obtained by or assigned to each Defendant for the purpose of collecting or attempting to collect it from PORTER.

53. PORTER had a credit card account with Bank of America, N.A. which was used by PORTER to make purchases personally for herself or for her family or home and not in connection with any business transactions.

54. PORTER made demand that Defendants dismiss the Porter Collection Case as it was commenced after the applicable statute of limitations had expired and, in response, SMITH filed a Notice of Dismissal without prejudice on or about November 21, 2014.

55. By commencing the Porter Collection Case, Defendants:

55.01. falsely represented the character of the Porter Debt;

55.02. threatened to have a judgment entered against PORTER which could not be legally obtained had Defendants disclosed that the applicable statute of limitations had expired;

55.03. used deceptive means in an attempt to collect the Porter Debt;

55.04. used unfair or unconscionable means in an attempt to collect the Porter Debt; and

55.05. engaged in the act, use or employment of an unconscionable commercial practice, deception, fraud, false pretense and misrepresentation in connection with the attempt to collect a consumer debt.

(C)     *The Close Loop Network's Attempt to Collect from MENTE.*

56. On February 11, 2015, SMITH commenced a civil action ("Mente Collection Case") in the Superior Court of New Jersey by filing a complaint in a case entitled *CACH OF NEW, LLC As Assignee of MBNA America, N.A.* [sic: probably MBNA America Bank, N.A.] *v. Dan Mente* which was designated in that court by Docket No. UNN-DC-001323-15.

57. A true copy of that complaint is attached as **Exhibit B.**

**58.**      In accordance with rules governing that court, Defendants provided the court with MENTE's address and the clerk of that court arranged for service of process through the mail.

**59.**      Sometime after February 11, 2015, MENTE was served with process in the Mente Collection Case.

**60.**      Among other things, the complaint filed in the Mente Collection Case alleged:

> **60.01.**  MBNA America, N.A., as the "Issuer," issued a credit card under MENTE's name and assigned a specific account number;

> **60.02.**  MENTE's last payment on that account was made on or about October 1, 2010 but that there still remained a past due balance ("Mente Debt") on the account in the amount of $14,422.34.

**61.**      The complaint also alleged that MENTE agreed to the terms and conditions set forth in a card holder agreement.

**62.**      Pursuant to the card holder agreement, Delaware law governed the parties' rights with respect to the Mente Debt.

**63.**      Pursuant to the card holder agreement MENTE would have been in default when a minimum payment became past due and, so long as there was a balance on the account, a minimum payment was due no less frequently than monthly.

**64.**      Based on the alleged date of last payment and the requirement for monthly minimum payments, the debt alleged to be due from MENTE was in default prior to February 11, 2012 which was more than three years prior to the commencement of the Mente Collection Case.

**65.**      Based on the allegations in the complaint filed in the Mente Collection Case, the Mente Debt was in default at the time it was placed with, obtained by or assigned to each Defendant for the purpose of collecting or attempting to collect it from MENTE.

**66.**      MENTE had a credit card account with MBNA America, N.A. which, on information and belied, was used by his ex-wife as an authorized user to purchase goods and services for herself or for her family or home and not in connection with any business transaction.

**67.**      MENTE hired counsel to represent him at a fixed fee of $1,750.00. In addition, MENTE paid $30.00 as the court filing fee to file his Answer to the Complaint and $25.00 as the court filing fee to file a motion.

**68.**     On March 6, 2015, MENTE, through counsel, filed an Answer to the Complaint.

**69.**     On March 6, 2015, MENTE, through counsel, filed a Motion for Summary Judgment seeking to dismiss the Mente Collection Case with prejudice based on it being filed after the applicable statute of limitations had expired.

**70.**     Defendants opposed MENTE's Summary Judgment Motion and, following oral argument on April 2, 2015, the Honorable John M. Deitch, J.S.C. granted MENTE's summary judgment motion.

**71.**     A true copy of the Order granting summary judgment is annexed as **Exhibit C** and a true copy of the transcript of Judge Deitch's decision is annexed as **Exhibit D**.

**72.**     By commencing the Mente Collection Case, Defendants:

> **72.01.**  falsely represented the character of the Mente Debt;

> **72.02.**  threatened to have a judgment entered against MENTE which could not be legally obtained had Defendants disclosed that the applicable statute of limitations had expired;

> **72.03.**  used deceptive means in an attempt to collect the Mente Debt;

> **72.04.**  used unfair or unconscionable means in an attempt to collect the Mente Debt; and

> **72.05.**  engaged in the act, use or employment of an unconscionable commercial practice, deception, fraud, false pretense and misrepresentation in connection with the attempt to collect a consumer debt.

**(D)**     *The Close Loop Network's Attempt to Collect from JACQUES.*

**73.**     On December 15, 2014, SMITH commenced a civil action ("Jacques Collection Case") in the Superior Court of New Jersey by filing a complaint in a case entitled *CACH, LLC As Assignee of MBNA America, N.A.* [sic-probably MBNA America Bank, N.A.] *v. Schubert E. Jacques* which was designated in that court by Docket No. UNN-DC-013990-14.

**74.**     A true copy of that complaint is attached as **Exhibit E.**

**75.**     In accordance with rules governing that court, Defendants provided the court with JACQUES's address and the clerk of that court arranged for service of process through the mail.

**76.**     Sometime after December 15, 2014, JACQUES was served with process in the Jacques Collection Case.

**77.**     Among other things, the complaint filed in the Jacques Collection Case alleged:

> **77.01.**  MBNA America, N.A., as the "Issuer," issued a credit card under JACQUES's name and assigned a specific account number;

> **77.02.**  JACQUES's last payment on that account was made on or about October 17, 2011 but that there still remained a past due balance ("Jacques Debt") on the account in the amount of $5,695.34.

**78.**     The complaint also alleged that JACQUES agreed to the terms and conditions set forth in a card holder agreement.

**79.**     Pursuant to the card holder agreement, Delaware law governed the parties' rights with respect to the Jacques Debt.

**80.**     Pursuant to the card holder agreement JACQUES would have been in default when a minimum payment became past due and, so long as there was a balance on the account, a minimum payment was due no less frequently than monthly.

**81.**     Based on the alleged date of last payment and the requirement for monthly minimum payments, the debt alleged to be due from JACQUES was in default prior to December 15, 2011 which was more than three years prior to the commencement of the Jacques Collection Case.

**82.**     Based on the allegations in the complaint filed in the Jacques Collection Case, the Jacques Debt was in default at the time it was placed with, obtained by or assigned to each Defendant for the purpose of collecting or attempting to collect it from JACQUES.

**83.**     JACQUES had a credit card account with MBNA America, N.A. which was used by JACQUES to make purchases personally for herself or for her family or home and not in connection with any business transactions.

**84.**     JACQUES, representing himself and in order to avoid the entry of default, filed a timely Answer to the Complaint on January 15, 2015 which included his payment of the required filing fee in the amount of $30.00.

**85.**     Through his counsel retained by JACQUES to pursue the claims raised in this Complaint, on February 13, 2015, JACQUES requested that Defendants dismiss the Jacques Collection Case. That request was not only made to the attorney employed by SMITH but to two attorneys  who have, in the past, represented one or more of the

Defendants in defense of claims arising under the FDCPA.

**86.**     None of those attorneys responded whether the Defendants (or any of them) would dismiss the Jacques Collection Case.

**87.**     In view of the fact that (1) the attorney appearing for CACH in the Mente Collection Case was the same as the attorney appearing for CACH in the Jacques Collection Case, and (2) those two cases were both before Judge Deitch, after Judge Deitch granted summary judgment in MENTE's favor, counsel for JACQUES renewed his request that Defendants dismiss the Jacques Collection Case.

**88.**     As of April 14, 2015, no one on behalf of any of the Defendants communicated whether the Jacques Collection Case would be dismissed.

**89.**     The trial date in the Jacques Collection Case was scheduled for April 16, 2015.

**90.**     Due to work commitments requiring him to be out of state on April 16, 2015, JACQUES (still representing himself in the Jacques Collection Case) attempted to obtain a postponement of the trial but received no response from the court.

**91.**     Afraid that his failure to appear on April 16, JACQUES was compelled to hire counsel.

**92.**     In an effort to avoid the time and expense associated with appearing on April 16, 2015, counsel for JACQUES again attempted to obtain a response from any of the Defendants as to whether the Jacques Collection Case would be dismissed.

**93.**     On April 15, 2015—the day before trial—SMITH replied, "My client decided to proceed with the above case, despite the decision in Mente."

**94.**     Counsel for CACH and for JACQUES appeared in court for the Jacques Collection Case. After unsuccessful mediation of the Case, CACH applied for leave to voluntarily dismiss the action without prejudice. Counsel for JACQUES did not object and the court granted CACH's request.

**95.**     As a result, JACQUES has incurred both the cost of filing fees and attorney's fees to defend the Jacques Collection Case.

**96.**     By commencing the Jacques Collection Case, Defendants:

    **96.01.**  falsely represented the character of the Jacques Debt;

    **96.02.**  threatened to have a judgment entered against JACQUES which could not be legally obtained had Defendants disclosed that the

applicable statute of limitations had expired;

**96.03.**   used deceptive means in an attempt to collect the Jacques Debt;

**96.04.**   used unfair or unconscionable means in an attempt to collect the Jacques Debt; and

**96.05.**   engaged in the act, use or employment of an unconscionable commercial practice, deception, fraud, false pretense and misrepresentation in connection with the attempt to collect a consumer debt.

## VI.   CLASS ALLEGATIONS

**97.**   Plaintiffs bring this action both individually and as a class action on behalf of the Class they seek to represent pursuant to Fed. R. Civ. P. 23.

**98.**   Subject to discovery and further investigation which may cause Plaintiffs to modify the following class definition at the time Plaintiff moves for class certification, Plaintiffs define the "**Class**" as follows:

Excluding persons who, prior to the date this action is certified to proceed as a class action, either (a) died, (b) obtained a discharge in bankruptcy, (c) commenced an action in any court against Defendant alleging a violation of the Fair Debt Collection Practices Act, (d) signed a general release of claims against Defendant, or (e) is a Judge assigned to this case or member of such Judge's staff or immediate family, the Class consists of:

Each natural person who was named as a defendant in a Lawsuit commenced by Defendants during the Class Period in an attempt to collect on a Stale Debt, where:

#

"Class Period" means the one year period prior to the filing of this complaint and ending 21 days thereafter;

"Lawsuit" means a civil action commenced in the Superior Court of New Jersey;

"Stale Debt" means a financial obligation owed or alleged to be owed on a credit account governed by a written agreement which chose Delaware law and was issued by MBNA America Bank, N.A, FIA Card Services, N.A. or Bank of America, N.A. when the last payment on that account, as shown in the records obtained by Defendants, was more than three years and 35 days before the date Defendants commenced the Lawsuit.

**99.**   The "Class Claims" consist of all Claims arising under the FDCPA based on or arising from Defendants' commencement of a Lawsuit to collect a Stale Debt.

**100.**     Plaintiffs further seek to certify a "**Sub-Class**," which consists of each member of the **Class**:

      (a)    against whom a judgment was entered in a Lawsuit;

      (b)    who paid money which was in whole or partial satisfaction of the Debt or the judgment entered in a Lawsuit; and/or

      (c)    who paid money for legal services, litigation expenses or costs of suit in defense of a Lawsuit;

      (d)    during the six year period prior to the filing of this complaint and ending 21 days thereafter.

**101.**     The "Sub-Class Claims" consist of all Claims arising under the FDCPA and/or New Jersey Consumer Fraud Act based on or arising from Defendants' commencement of a Lawsuit to collect a Stale Debt.

**102.**     Based on discovery and further investigation (including, but not limited to, Defendants' disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Class, Class Claims, Class Period, Sub-Class, and Sub-Class Claims seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

**103.**     The identity of each member of the Class and Sub-Class is readily ascertainable from Defendants' business records and those records of the entity(ies) on whose behalf Defendants sought to collect Stale Debts.

**104.**     This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

      **104.01.** *Numerosity.* Plaintiff is informed and believes, and on that basis alleges, that the members of the Class are so numerous that joinder of all members would be impractical. On information and belief, there are more than 40 members of the Class.

      **104.02.** *Numerosity.* Plaintiff is informed and believes, and on that basis alleges, that the members of the Sub-Class are so numerous that joinder of all members would be impractical. On information and belief, there are more than 40 members of the Sub-Class.

      **104.03.** *Commonality.* Common questions of law and fact exist as to all members of the Class; the principal issues are whether Defendant's

written communications to consumers, in the form attached as ***Exhibits A, B, and E***, violate 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692(10), 1692f, and 1692f(1).

104.04. *Commonality.* Common questions of law and fact exist as to all members of the Sub-Class; the principal issues are whether Defendant's written communications to consumers, in the form attached as ***Exhibits A, B, and E***, violate 15 U.S.C. §§ 1692e(2)(A), 1692e(5), 1692(10), 1692f, and 1692f(1) and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 ("NJCFA").

104.05. *Typicality.* Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs and all members of the Class have claims arising out of the Defendants' common and uniform course of conduct with respect to Defendants' written communications to consumers in the form attached as ***Exhibits A, B, and E***.

104.06. *Typicality.* Plaintiffs' claims are typical of the claims of the Sub-Class members. Plaintiffs and all members of the Sub-Class have claims arising out of the Defendants' common and uniform course of conduct with respect to Defendants' written communications to consumers in the form attached as ***Exhibits A, B, and E***.

104.07. *Adequacy.* Plaintiffs will fairly and adequately protect the interests of members of the Class and Sub-Class insofar as Plaintiffs have no interests that are adverse to the absent Class and Sub-Class members. The Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Plaintiffs and their counsel have no interests which might cause them not to vigorously pursue the instant class action lawsuit.

105.     This action may be maintained as a "B1a-class", a "B2-class", a "B3-class", or a hybrid of any two or all three types however, at the time of commencing this action, Plaintiff expects to seek certification of a class under Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to members of the Class appear to predominate over any questions affecting an individual member, and a class action would be superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be

realized, and difficulties are unlikely in the management of a class action.

### VII.   FIRST CAUSE OF ACTION FOR PORTER'S FDCPA CLAIMS

**106.**    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs of this Complaint.

**107.**    SQUARE2 is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**108.**    CACH is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**109.**    CACH-NJ is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**110.**    SMITH is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**111.**    CALEF is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**112.**    DBG is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**113.**    The Porter Debt is a "debt" within the meaning of 15 U.S.C. §1692a(5).

**114.**    PORTER is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

**115.**    One or more of the Defendants, acting on behalf of, in concert with, and in support of the objectives of the Closed Loop Network, attempted to collect the Porter Debt from PORTER.

**116.**    In Defendants' attempt to collect the Porter Debt, Defendants commenced the Porter Collection Case.

**117.**    At the time the Defendants commenced the Porter Collection Case, suit on the Porter Debt was barred by the applicable statute of limitations.

**118.**    Defendants' commencement of the Porter Collection Case violated the FDCPA in one or more of the following ways:

> **118.01.** Using false, deceptive, or misleading representations and/or means in connection with the collection of any debt, which constitutes a violation of 15 U.S.C. §1692e including but not limited to:
>
> > (1)   Falsely representing the character of the Porter Debt in violation of 15 U.S.C. § 1692e(2)(A);

(2) Falsely representing the legal status of the Porter Debt in violation of 15 U.S.C. § 1692e(2)(A);

(3) Threatening to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. §1692e(5); and

(4) Using a false representation and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10).

**118.02.** Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

**118.03.** Collecting or attempting to collect an amount not permitted by law in violation of 15 U.S.C. § 1692f(1).

**119.** Based on any one of those violations, Defendants are each liable to PORTER and the Class for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k. action.

### VIII.   SECOND CAUSE OF ACTION FOR MENTE'S FDCPA CLAIMS

**120.** Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs of this Complaint.

**121.** SQUARE2 is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**122.** CACH is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**123.** CACH-NJ is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**124.** SMITH is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**125.** CALEF is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**126.** DBG is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**127.** The Mente Debt is a "debt" within the meaning of 15 U.S.C. §1692a(5).

**128.** MENTE is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

**129.** One or more of the Defendants, acting on behalf of, in concert with, and in support of the objectives of the Closed Loop Network, attempted to collect the Mente Debt from MENTE.

**130.** In Defendants' attempt to collect the Mente Debt, Defendants commenced the Mente Collection Case.

**131.** At the time the Defendants commenced the Mente Collection Case, suit on the Mente Debt was barred by the applicable statute of limitations.

**132.** Defendants' commencement of the Mente Collection Case violated the FDCPA in one or more of the following ways:

**132.01.** Using false, deceptive, or misleading representations and/or means in connection with the collection of any debt, which constitutes a violation of 15 U.S.C. §1692e including but not limited to:

(1) Falsely representing the character of the Porter Debt in violation of 15 U.S.C. § 1692e(2)(A);

(2) Falsely representing the legal status of the Porter Debt in violation of 15 U.S.C. § 1692e(2)(A);

(3) Threatening to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. §1692e(5); and

(4) Using a false representation and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10).

**132.02.** Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

**132.03.** Collecting or attempting to collect an amount not permitted by law in violation of 15 U.S.C. § 1692f(1).

**133.** Based on any one of those violations, Defendants are liable to MENTE and the Class for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k. action.

## IX.   THIRD CAUSE OF ACTION FOR JACQUES'S FDCPA CLAIMS

**134.** Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs of this Complaint.

**135.** SQUARE2 is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**136.**     CACH is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**137.**     CACH-NJ is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**138.**     SMITH is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**139.**     CALEF is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**140.**     DBG is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

**141.**     The Jacques Debt is a "debt" within the meaning of 15 U.S.C. §1692a(5).

**142.**     JACQUES is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

**143.**     One or more of the Defendants, acting on behalf of and in support of the objectives of the Closed Loop Network, attempted to collect the Jacques Debt from JACQUES.

**144.**     In Defendants' attempt to collect the Jacques Debt, Defendants commenced the Jacques Collection Case.

**145.**     At the time the Defendants commenced the Jacques Collection Case, suit on the Jacques Debt was barred by the applicable statute of limitations.

**146.**     Defendants' commencement of the Jacques Collection Case violated the FDCPA in one or more of the following ways:

    **146.01.** Using false, deceptive, or misleading representations and/or means in connection with the collection of any debt, which constitutes a violation of 15 U.S.C. §1692e including but not limited to:

    (1)  Falsely representing the character of the Jacques Debt in violation of 15 U.S.C. § 1692e(2)(A);

    (2)  Falsely representing the legal status of the Jacques Debt in violation of 15 U.S.C. § 1692e(2)(A);

    (3)  Threatening to take any action that cannot legally be taken or that is not intended to be taken in violation of 15 U.S.C. §1692e(5); and

    (4)  Using a false representation and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10).

**146.02.** Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

**146.03.** Collecting or attempting to collect an amount not permitted by law in violation of 15 U.S.C. § 1692f(1).

**147.** Based on any one of those violations, Defendants are liable to JACQUES and the Class for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k.

### X.   FOURTH CAUSE OF ACTION FOR MENTE'S NJCFA CLAIMS.

**148.** MENTE realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

**149.** MENTE is a person within the meaning of N.J.S.A. 56:8-1(d).

**150.** Each of the Defendants are a person within the meaning of is a person within the meaning of N.J.S.A. 56:8-1(d).

**151.** The Defendants' attempt to collect the Mente Debt by way of the Mente Collection Case constituted the act, use or employment of an unconscionable commercial practice, deception, fraud, false pretense and misrepresentation in connection with the subsequent performance of the sale or advertisement of merchandise.

**152.** Defendants knew or should have known the Mente Debt was time-barred and its attempt to collect the Mente Debt by way of the Mente Collection Case constituted the knowing concealment, suppression or omission of a material fact with intent that others reply upon such concealment, suppression or omission in connection with the subsequent performance of the sale or advertisement of merchandise.

**153.** If Defendants representations were not true, then Defendants' filing and service of the Complaint in the Mente Collection Case constituted their knowing concealment, suppression or omission of the fact that those representations were not true with intent that others rely on such concealment, suppression or omission in connection with the attempt to collect a consumer debt.

**154.** The "subsequent performance of the sale or advertisement of merchandise" as used in the NJCFA and as alleged in the preceding paragraphs has been interpreted by the courts of the State of New Jersey to include the collection activities of an assignee of consumer credit. *See Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 577 (2011); and *Jefferson Loan Co. v. Session*, 397 N.J. Super. 520 (App. Div. 2008).

**155.** As a direct, legal and proximate cause of Defendants' conduct in violation of the NJCFA, MENTE has suffered an ascertainable loss of money within the meaning of N.J.S.A. 56:8-19.

### XI.   FIFTH CAUSE OF ACTION FOR JACQUES'S NJCFA CLAIMS.

**156.**   JACQUES realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

**157.**   JACQUES is a person within the meaning of N.J.S.A. 56:8-1(d).

**158.**   Each of the Defendants are a person within the meaning of is a person within the meaning of N.J.S.A. 56:8-1(d).

**159.**   The Defendants' attempt to collect the Jacques Debt by way of the Jacques Collection Case constituted the act, use or employment of an unconscionable commercial practice, deception, fraud, false pretense and misrepresentation in connection with the subsequent performance of the sale or advertisement of merchandise.

**160.**   Defendants knew or should have known the Jacques Debt was time-barred and its attempt to collect the Jacques Debt by way of the Jacques Collection Case constituted the knowing concealment, suppression or omission of a material fact with intent that others reply upon such concealment, suppression or omission in connection with the subsequent performance of the sale or advertisement of merchandise.

**161.**   If Defendants' representations were not true, then Defendants' filing and service of the Complaint in the Jacques Collection Case constituted their knowing concealment, suppression or omission of the fact that those representations were not true with intent that others rely on such concealment, suppression or omission in connection with the attempt to collect a consumer debt.

**162.**   The "subsequent performance of the sale or advertisement of merchandise" as used in the NJCFA and as alleged in the preceding paragraphs has been interpreted by the courts of the State of New Jersey to include the collection activities of an assignee of consumer credit. *See Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 577 (2011); and *Jefferson Loan Co. v. Session*, 397 N.J. Super. 520 (App. Div. 2008).

**163.**   As a direct, legal and proximate cause of Defendant's conduct in violation of the NJCFA, JACQUES has suffered an ascertainable loss of money within the meaning of N.J.S.A. 56:8-19.

## XII.    PRAYER FOR RELIEF

**164.**    WHEREFORE, Plaintiffs, Jennifer E. Porter, Dan Mente and Schubert E. Jacques respectfully request that the Court enter judgment against Defendants, SquareTwo Financial Corporation, CACH, LLC, CACH of NJ, LLC, Law Firm of Allan C. Smith, P.C., The Law Firm of Ryan E. Calef and Associates, LLC, and DBG Collection, Inc.:

**164.01.** As for the First, Second and Third Causes of Action:

(1)   An order certifying that one or more of the Causes of Action may be maintained as a class pursuant to Fed. R. Civ. P. 23 including defining the class, defining the class claims, and appointing Plaintiffs and their undersigned attorneys to represent the Class and Sub-Class;

(2)   An award of statutory damages on the First Cause of Action for PORTER pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

(3)   An award of statutory damages on the Second Cause of Action for MENTE pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

(4)   An award of statutory damages on the Third Cause of Action for JACQUES pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

(5)   An award of actual damages on the Second Cause of Action for MENTE pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

(6)   An award of actual damages on the Third Cause of Action for JACQUES pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

(7)   An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

(8)   An award of actual damages for the Sub-Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(9)   Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

(10)  For such other and further relief as may be just and proper.

**164.02.** As for the Fourth and Fifth Causes of Action:

(1) An order certifying that one or more of the Causes of Action may be maintained as a class pursuant to Fed. R. Civ. P. 23 including defining the Sub-Class, defining the Sub-Class claims, and appointing MENTE, JACQUES, and their undersigned attorneys to represent the Sub-Class;

(2) Equitable relief pursuant to N.J.S.A. 56:8-19 ordering Defendants: (i) to vacate all judgments obtained against members of the Sub-Class; (ii) to return all monies obtained from the Sub-Class members pursuant to those judgments; and (iii) to return all monies voluntarily paid by members of the Sub-Class in settlement of the Lawsuit brought against each of them;

(3) An award of threefold the ascertainable loss sustained by MENTE;

(4) An award of threefold the ascertainable loss sustained by JACQUES;

(5) An award of threefold the ascertainable loss sustained by each member of the Sub-Class; and

(6) For such other and further relief as may be just and proper.

## XIII.   JURY DEMAND

**165.**    Plaintiffs, on behalf of themselves and all others similarly situated, demand a trial by jury on all issues so triable.

## XIV.   CERTIFICATION PURSUANT TO LOCAL CIVIL RULE

**166.**    Pursuant to L. Civ. R. 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party, other than putative class members, who should be joined in the action at this time.

STERN•THOMASSON LLP
Representing Plaintiffs, Jennifer E. Porter, Dan Mente, and Schubert E. Jacques

*s/ Andrew T. Thomasson*
Dated: July 4, 2015                           Andrew T. Thomasson

*s/ Philip D. Stern*
Dated: July 4, 2015                           Philip D. Stern

### SCHEDULE A

*Ihwd*       The FDCPA "covers conduct taken in connection with the collection of any debt." *McLaughlin v. Phelan Hallinan & Schmieg, LLP,* 756 F.3d 240 (3rd Cir. 2014) (internal quotation marks omitted). The Act "was passed to promote ethical business practices by debt collectors." *Sullivan v. Equifax, Inc.,* CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002). The Act was necessary because existing consumer protection laws were inadequate as demonstrated by abundant evidence of abusive, deceptive, and unfair debt collection practices by many debt collectors which contributed to the number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. 15 U.S.C. §§ 1692(a) and 1692(b). Thus, Congress adopted the FDCPA with the "express purpose to eliminate abusive debt collection practices by debt collectors, ***and*** to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 130 S. Ct. 1605, 1623, 176 L. Ed. 2d 519 (2010) (internal quotes and ellipsis omitted; emphasis added); 15 U.S.C. § 1692(e).

*Vhfrqg*   The Act is not concerned with whether the consumer owes the debt. "Congress recognized that 'the vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness or marital difficulties or divorce.'" *FTC v. Check Investors, Inc.,* 502 F.3d 159, 165 (3d Cir. 2007). Nevertheless, "'[a] basic tenet of the Act is that *all* consumers, *even those who have mismanaged their financial affairs resulting in default on their debt,* deserve 'the right to be treated in a reasonable and civil manner.'" *FTC, supra,* 502 F.3d at 165 (emphasis added) quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1324 (7th Cir. 1997).

*Wklug*   "Congress also intended the FDCPA to be self-enforcing by private attorney generals [sic]." *Weiss v. Regal Collections,* 385 F.3d 337, 345 (3d Cir. 2004). "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Services, Inc.,* 516 F.3d 85, 91 (2d Cir. 2008); and, see, *Gonzales v. Arrow Fin. Services, LLC,* 660 F.3d 1055 (9th Cir. 2011).

*Irxuwk*   The FDCPA is construed broadly so as to effectuate its remedial purposes and a debt collector's conduct is judged from the standpoint of the "least sophisticated consumer," *Brown v. Card Serv. Ctr,* 464 F.3d 450, 453n1 (3d Cir. 2006). In this way, "the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993). For example, a "debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455. Furthermore, except where the Act expressly makes knowledge or intent an element of the violation, the "FDCPA is a strict liability statute."

*Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011) (citing, in footnote 7, supporting authorities from the Second, Seventh, Ninth and Eleventh Circuits).

*Iliwk1*    The FDCPA creates no special exceptions for attorneys – even when that conduct falls within conduct traditionally performed only by attorneys. *Heintz v. Jenkins*, 514 U.S. 291 (1995). For example, there is no "litigation privilege" for debt collecting attorneys. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226 (4th Cir. 2007). "Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA, and their litigation activities must comply with the requirements of that Act." *Piper v. Portnoff Law Associates*, 396 F.3d 227, 232 (3d Cir. 2005). Indeed, "[a]buses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Crossley v. Lieberman,* 868 F.2d 566, 570 (3d Cir. 1989).

*Vl{wk1*    Liability under the FDCPA arises upon the showing of a single violation. *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3 (2d Cir. 1993).

*Vhyhqwk1* "To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

*Hljkwk1*   Liability under the FDCPA is excused *only* when a debt collector establishes, as an affirmative defense, the illegal conduct was either "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), or an "act done or omitted in good faith in conformity with any advisory opinion of the" Consumer Financial Protection Bureau, 16 U.S.C. § 1692k(e). Thus, common law privileges and immunities are not available to absolve a debt collector from liability under the FDCPA. See, *Heintz v. Jenkins*, 514 U.S. 21, (1995); *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3rd Cir. 2011); and *Sayyed v. Wolpoff & Abramson*, 485 F. 3d 236, 232-233 (4th Cir. 2007).

*Q lqwk1*    A debt collector who violates any provision of the FDCPA is liable for "additional damages" (also called "statutory damages") up to $1,000.00, and attorney's fees and costs. 15 U.S.C. § 1692k(a). The absence of actual damages is not a bar to such actions as "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n3 (1973). Indeed, Congress, through "the FDCPA[,] permits and encourages parties who have suffered no loss to bring civil actions for statutory violations." *Jacobson, supra,* 516 F.3d at 96 (emphasis added).

*Whqwk1*    The FDCPA also provides for class relief "capped" at the lesser of $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). "Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA." *Weiss, supra,* 385 F.3d at 345. Indeed, while limiting class relief, Congress nevertheless

recognized the effectiveness of class actions to enforce the FDCPA and, therefore, mandated that a class action should be maintained "without regard to a minimum individual recovery." *Id.* When a debt collector opposes class certification based on its minimal or negative net worth, "there is a chance that no claims would proceed against Defendants due to a lack of financial incentive, thereby leaving unpunished allegedly thousands of FDCPA violations. This is exactly the kind of result Congress intended to avoid through the creation of the class action form." *Barkouras v. Hecker*, 2006 WL 3544585, 2006 U.S.Dist.Lexis 88998 (D.N.J. Dec. 8, 2006.